[No. A021835. Sixth Dist. Dec. 13, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WARREN LEWIS DICKENS, Defendant and Appellant.

COUNSEL

Elveta L. Francis for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Charles J. James, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PANELLI, P. J.**—Warren Lewis Dickens appeals from a judgment convicting him of possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) He challenges a ruling denying his motion to suppress evidence obtained as a result of a search incident to his arrest. He alleges he was unlawfully arrested on a warrant issued for the same charges on which he had previously been arrested, booked, and released on his own recognizance with a pending court arraignment date. We find this contention meritorious, and therefore reverse the judgment.

*Facts*

On September 17, 1979, the Ontario Federal Express office received a package for shipment to San Jose. The package was to be held at the San Jose airport for pickup by addressee "Wally Dickens." The party mailing the package would not, however, give a local phone number for addressee to be contacted upon the parcel's arrival. The Federal Express clerk became suspicious due to the lack of information provided, and after the customer left the office, opened the package for inspection. A plastic vial containing a white powdery substance was found inside. The Ontario Police Department was contacted, the white substance was tested and found to contain amphetamine.

The Ontario police subsequently sent the repackaged parcel on Air California in the care of the San Jose Police Department. Officer Scott Seaman

picked up the package at the San Jose airport later that day and kept it in police custody overnight. The next morning Officers Rose and Ouimet delivered the parcel to the Federal Express office in Sunnyvale. Appellant came in and picked up the package. As he exited the Federal Express building, Officers Rose and Ouimet placed him under arrest. Appellant was asked by the arresting officers what he wanted to do with his car, and he requested it be parked in an adjacent parking area. While moving appellant's car, Officer Rose noticed an open shaving kit sitting on the floor between the two front seats which contained, among other things, two small brown vials and a hand-rolled cigarette. These items were seized. Their contents were later analyzed at the laboratory of criminalistics and the vials were found to contain methamphetamine while the hand-rolled cigarette contained marijuana.

Following his arrest by the San Jose police on September 18, 1979, appellant was booked and released on his own recognizance with a pending court appearance date scheduled for October 9, 1979. On September 19, 1979, a "crime report" and "supplementary offense report" were respectively filed by Police Officers Seaman and Rose detailing the events and circumstances leading up to appellant's arrest on September 18th. Based on these police reports, on September 26, 1979, a complaint was filed by Officers Seaman, Rose and Ouimet charging appellant with violations of Health and Safety Code sections 11378 (possession of methamphetamine for sale), 11379 (transportation of methamphetamine), and 11357, subdivision (b) (possession of marijuana).[1] An arrest warrant was issued on this complaint.

On October 4, 1979, Officers Venzon and Cardin went to appellant's house to execute the arrest warrant on him. The face of the warrant alleged violations of Health and Safety Code sections 11378, 11379, and 11357, subdivision (b). The police officers arrived at appellant's house around 8 p.m. Appellant was not home, but his wife ushered the officers into the house. Shortly thereafter appellant's car pulled up in front of the house. As appellant entered into the house he was placed under arrest. The officers then escorted appellant out of the house and while Officer Venzon conducted a pat-down search of appellant, Officer Cardin went over to his car and illuminated its interior with his flashlight. The butt of a handgun protruding from the driver's seat was in plain view. The gun was subsequently seized and found to be loaded. At the police station appellant was stripped searched prior to booking. While disrobing, a small vial fell out of his clothing. It was later found to contain methamphetamine.

---

[1]The marijuana possession charge appeared in the initial complaint but was eventually dropped.

On October 15, 1979, the original complaint was amended to add three additional counts: one charging appellant with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and two charging him with carrying a concealed and loaded firearm (Pen. Code, §§ 12025, subd. (a); 12031, subd. (a)). These new charges stemmed from the October 4th arrest of appellant. Appellant moved to dismiss, under Penal Code section 995[2], the two drug counts (possession for sale and transportation) stemming from his first arrest. He also filed a section 1538.5 motion to suppress all the evidence seized during the two arrests and a section 1539 motion traversing the October 4, 1979, arrest warrant. The court granted appellant's motions to dismiss the two drug counts and to suppress the evidence derived from his first arrest. It denied, however, appellant's motions to traverse the October 4, 1979, arrest warrant and to suppress the evidence seized as a result of his arrest pursuant to the arrest warrant.

Appellant ultimately pled guilty to the remaining drug possession count and admitted a prior felony conviction, in exchange for dismissal of the firearm counts. He was sentenced to state prison for the midterm of two years with a one-year enhancement for the prior pursuant to section 667.5, subdivision (b) for a total term of three years. Execution of the sentence was, however, stayed and appellant was allowed to post bail pending the resolution of this appeal.

### Discussion

The sole issue on appeal concerns the validity of the October 4, 1979 arrest. Citing *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761], appellant contends the evidence obtained by the police incident to the arrest should have been suppressed by the court since the arrest itself was illegal. We agree and accordingly reverse the judgment.

In *Ramirez* our Supreme Court held that an arrest based solely upon a recalled bench warrant was made without probable cause and that the fruits of a search incident to such an arrest were to be suppressed. (34 Cal.3d at p. 552.) *Ramirez* involved the arrest of a suspect based upon information received by the arresting police officer that the police computer system revealed an outstanding bench warrant for the suspect. A booking search resulted in the discovery of contraband. Although the arresting officer believed the warrant was valid, the warrant had in fact been recalled six months earlier. In its opinion our high court acknowledged the arresting officer's good faith reliance upon the erroneous information communicated to him, yet it held this fact "does not magically resuscitate a recalled war-

---

[2]Unless otherwise indicated, further statutory references are to the Penal Code.

rant and, phoenix-like, recreate a valid outstanding document." (*Id.,* at p. 545.) In so holding it reasoned the fact the outstanding warrant had been recalled was or should have been within the "collective knowledge" of the police and as such it declined to sanction reliance by arresting officers upon outdated and inaccurate warrant information. (*Id.,* at p. 547.) The court went on to hold that "[h]ere we decline only to validate an arrest made on the basis of data which a law enforcement agency knew or *should have known were in error* because of inadequate or negligent record-keeping." (*Id.,* at p. 552; italics added.)

In the case at bench, the October 4, 1979, arrest warrant was issued solely based upon police reports chronicling the events and circumstances surrounding appellant's earlier arrest on September 18, 1979. The issuing magistrate was not presented with any additional information of wrongdoing by appellant. Thus, the action of the police officers in obtaining the arrest warrant for appellant on charges for which they knew, or should have known, he had already been arrested on, booked and released pending his court appearance, was the result of "inadequate or negligent record-keeping."[3] Therefore, under the rationale of *Ramirez,* the subsequent arrest of appellant was improper and illegal. The arresting officer's good faith in exercising an otherwise facially valid arrest warrant does not here, anymore than it did in *Ramirez,* vitiate the intitial lack of probable cause in issuing the arrest warrant. Since there was no probable cause to arrest appellant for a second time on the same charges, the fruits of the booking search incident to such an illegal arrest must then be suppressed. Therefore the trial court erred in denying appellant's suppression motion.[4]

---

[3]This court ordered the record on appeal to be augmented to include the file of the municipal court clerk. This file reveals that the printed form seeking the arrest warrant was signed by Officer Seaman on September 25, 1979. The form provides a space to indicate whether the defendant has been arrested or is not in custody, and whether a warrant is or is not requested. The form had the words "has been arrested" and warrant "is not requested" crossed out, which establishes that Officer Seaman requested a warrant even though he knew appellant had been booked and released. Also of passing interest is the fact that the O.R. release form was filed with the clerk *before* the warrant affidavit was filed, thereby establishing that appellant had already been booked on the charges and released.

[4]This case was briefed before the United States Supreme Court decided *United States* v. *Leon* (1984) — U.S. —, (82 L.Ed.2d 677, 104 S.Ct. 3405). *Leon* held that evidence obtained in objectively reasonable reliance upon a subsequently invalidated search warrant need not be excluded. Here, however, unlike *Leon,* there is an inadequate record concerning the procedure by which the arrest warrant was sought and obtained from the magistrate. Moreover, we note that even under *Leon* "the objective reasonableness" standard for the exception applies not only to officers who eventually execute a warrant, but also to "officers who originally obtained it or who provided information material to the probable cause determination." (*Id.,* at p. —, fn. 24 [82 L.Ed.2d at p. 698, 104 S.Ct. at p. 3421].) Here, as pointed out above, the arrest warrant was issued based solely upon police reports which disclosed that appellant had already been arrested on the same charges for which the warrant was sought and obtained. Moreover, as we discuss in footnote 3, *ante,* the officer's affidavit

The judgment of conviction is reversed.

Agliano, J., and Brauer, J., concurred.

---

seeking the arrest warrant inaccurately reported that appellant had not been arrested on the charges, which allegation was incorrect. In such circumstances, the *Leon* exception would be inapplicable.